UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ZEEWE DAKAR MPALA      :
 PLAINTIFF,       :
            : CIVIL ACTION NO. 3:11cv1724(VLB)
            :
 v.          : FEBRUARY 22, 2013
            :
CITY OF NEW HAVEN, ET AL    :
 DEFENDANTS.      :

<u>MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS
[DKT. NOS. 20 AND 29]</u>

   The Defendants City of New Haven ("City") and Maria Tonelli ("Tonelli"), a librarian at the New Haven Public library, have moved to dismiss the Plaintiff Zeewe Dakar Mpala's ("Mpala") amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In the amended complaint, Mpala, proceeding *pro se*, brings a claim pursuant to 42 U.S.C. § 1983 for violation of the First Amendment, procedural due process, and selection enforcement equal protection in connection with his temporary removal from the public library.  For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss.

   <u>Procedural Background</u>

   On November 7, 2011, Mpala initiated this action against the City, New Haven Police Officer Illingsworth and Officer Robinson asserting a § 1983 claim for deprivation of his "right to liberty and procedural due process of the law under the 5th and 14th Amendment[s]" in connection with an incident on 11/18/2008 where Mpala alleges that the Defendant Officers kicked him out of the library upon Tonelli's false accusation that Mpala was creating a disturbance in

1

the library.  [Dkt. #1, Original Complaint, p. 1-2].   On January 30, 2012, the Defendants move to dismiss Mpala's complaint. [Dkt. # 11].   On April 5, 2012, Mpala filed an amended complaint which the Court construed to be in response to the Defendants' motion to dismiss.  [Dkt. #14].   The Court therefore denied the Defendants' motion to dismiss without prejudice to re-filing in light of the filing of the amended complaint. [Dkt. #16].  In the amended complaint, Mpala withdrew his claims against Officers Illingsworth and Robinson and named Tonelli as an additional Defendant.  [Dkt. #14].

On May 8, 2012, the Defendants filed a motion to dismiss Mpala's amended complaint.  [Dtk. #20].  Mpala then filed a second amended complaint without seeking leave from the Court to do so on June 21, 2012 in which he withdrew the City as a defendant in his action. [Dkt. #26].  On July 9, 2012, the Defendant Tonelli moved to dismiss claim one of the second amended complaint.  [Dkt. #29]. On August 9, 2012, the Plaintiff yet again filed a third amended complaint without seeking leave from the Court.  [Dkt. #32].  On August 22, 2012, the Court informed Mpala because he did not seek leave from the Court nor did he indicate that he had obtained consent for amending his complaint from Defendants, his third amended was a nullity.  [Dkt. #33].

Mpala then moved twice for reconsideration of the Court's order informing him that his third amended complaint was a nullity.  [Dkt. ##34-37].  On August 30, 2012, the Court ordered Mpala to prepare and share with defense counsel a proposed amended complaint by September 13, 2012 and then request defense counsel's consent to amend.  If consent was not given by September 20, 2012,

2

Mpala was ordered to file a motion to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(1).  [Dkt. #38].   On September 21, 2012, Mpala filed a motion to amend his complaint and a motion for preliminary injunction which the Court denied on the basis that Defendants have not consented and that Mpala was seeking to include new claims which arise from an entirely different nucleus of facts and is therefore not appropriate for inclusion in this case. [Dkt. ##39-42].

In deference to the Mpala's *pro se* status, the Court will consider both his amended and second amended complaints, which are the subject of the pending motions to dismiss.

<u>Factual Allegations</u>

In his amended complaint, Mpala alleges that two New Haven Police Officers threatened to arrest him "with bodily harm if necessary unless the Plaintiff exited the New [Haven] Public Library at once."  [Dkt. #14, Amended Compl. p. 1].  Mpala contends that these "threats were made because Maria Tonelli, the Defendant" had fabricated an incident against" him.   Mpala alleges that Tonelli made a 911 call to the New Haven Police Department ("NHPD") on the evening of 11/18/2008 .   He further alleges that Tonelli has in the past kicked out a number of patrons whom were all black males from the library "by the NHPD." *Id.* at 1-2.  Mpala has already complained about Tonelli's prior harassment towards him and her "habit of calling the police on Black patrons on a regular basis."  *Id.*  Mpala asserts that the police officers violated his "right to liberty and procedural due process."  *Id.*

In his second amended complaint, Mpala asserts that he had a first amendment right to be in a public place and access to a public place. [Dkt. #26, Second Amended Compliant, p. 1]. Mpala again alleges that Tonelli fabricated an incident against him, called the police, and that the police "violated his rights under the laws." *Id.*

In his original complaint, Mpala alleges that he was not arrested because he reluctantly complied with the Officers request that he leave the library and his library privileges were suspended for a week. [Dkt. #1, Compl., p. 1-2].

### Legal Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

4

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

<u>Analysis</u>

i.    **Procedural Due Process**

Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*,

494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990) (emphasis in original).  Due Process is a "flexible concept" that "varies with the particular situation." *Id.* at 127.  Consequently, the Court must consider "two distinct issues: 1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause, and, if so, 2) whether existing state procedures are constitutionally adequate." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005).  To assess whether the existing state procedures are constitutionally adequate, the Court applies the three-factor test articulated in *Mathews v. Eldridge* which requires the Court to balance the following factors known as the "Matthews Factors":

> (1) the private interest at stake, (2) the risk of an erroneous deprivation of that interest through the procedures used and the probative value (if any) of alternative procedures, (3) the government's interest, including the possible burdens of alternative procedures

O'Connor *v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005).

Neither party cites to any authority addressing whether an individual has a protected liberty interest in the use of a public library.   Neither the Second Circuit nor any district courts in this circuit have addressed this issue.  One district court in the Northern District of California has held that the inability to access the library for several hours did "not implicate a cognizable liberty interest."  *Grigsby v. City of Oakland*, No.C01-0010MMC, 2002 WL 1298759, at *3 (N.D.Cal. June 2, 2002).  In contrast, two other district courts have held that longer suspensions of library privileges did implicate protectable liberty interests. *Wayfield v. Town of Tisbury*, 925 F.Supp. 880, 885 (D. Mass. 1996) (holding that suspension of library

6

privileges for four months implicated a protectable liberty by analogizing library privileges to a license to drive or to conduct business); *Doyle v. Clark County Public Library*, No.C-3-07-003, 2007 WL 2407051, at *5 (S.D.Ohio Aug. 20, 2007) ("The right of the public to use the public library is best characterized as a protected liberty interest created directly by the First Amendment. Since the right is not absolute-it can be lost for engaging in conduct inconsistent with the purpose of public libraries."); cf *Hill v. Derrick*, No.4:05-cv-1229, 2006 WL 1620226, at *8 (M.D.Pa. June 8, 2006) (holding that plaintiff could not "establish a protected liberty interest in right to use the library from the Constitution's Due Process Clause" but had a liberty interest on the basis of state law).   It is therefore far from clear whether Mpala's inability to use the library for a week implicated a cognizable federal liberty interest.

However, the Court need not address this issue as assuming arguendo the existence of a protected liberty interest, Mpala has failed to state a procedural process due claim that is plausible on its face.  Mpala's due process claims fails because he baldly alleges that he was denied due process without identifying the process he was denied.  *See, e.g., Russo v. City of Hartford,* 158 F.Supp.2d 214, 232 (D.Conn.2001) (dismissing procedural due process claim where the plaintiff failed to "specifically allege what sort of process [s]he was entitled to or how it was denied"); *Fair Haven Develop. Corp. v. Destafano*, 528 F.Supp. 2d 25, 31 (D. Conn. 2007) ("plaintiff's procedural due process claim fails because it does not identify what sort of process FDHC was denied").  Mpala has tendered the naked assertion that he was deprived of due process without further factual

7

enhancement to render his claim plausible.  The Court therefore dismisses his procedural due process claim.

     ii.     **Equal Protection**

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985).  "Plaintiffs claiming selective enforcement must show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Brisbane v. Milano*, 443 Fed. Appx. 593, 594 (2d Cir. 2011) (internal quotation marks and citation omitted).  "Use of an impermissible consideration (such as race) must have been intentional, not merely negligent. Deliberate indifference suffices so long as the defendant's indifference was such that the defendant intended the discrimination to occur." *Id.* (internal quotation marks and citations omitted).

Mpala has failed to plausible state, by alleging particularized facts, that similarly situated others were treated differently by the New Haven Police Department or the New Haven Public Library as required to establish a selective enforcement claim.  Mpala has only conclusory alleged that Tonelli is in the habit of calling the police on black patrons but has not alleged any facts indicating that similarly situated non-black patrons were treated differently.  *See Sebold v. City*

*of Middletown,* Civ. No. 3:05-CV-1205(AHN), 2007 WL 2782527, at *26 (D.Conn. Sept. 21, 2007) ("In order to state a selective enforcement claim, a plaintiff must present evidence comparing herself to individuals that are 'similarly situated in all material respects.'") (citation omitted).

In addition, Mpala conclusorily alleges that Tonelli has targeted black males.  Such an allegation is no more than a conclusion and not entitled to the assumption of truth.  He does not allege that she said anything indicative of racial animus, nor does he cite instances in which white patrons were treated differently than African American patrons under the same or substantially similar circumstances.  After setting aside Mpala's conclusory assertion that Tonelli targets black males, his allegations also fail to state a plausible claim of racially discriminatory intent.  Because Mpala has failed to plausibly plead facts with respect to similarly situated others and discriminatory intent, his selective enforcement equal protection claim does not pass muster under *Iqbal*.  The Court therefore dismisses Mpala's selective enforcement equal protection claim.

iii.    First Amendment

The "elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case.'"  *Mangino v. Incorporated Village of Patchogue*, 739 F.Supp.2d 205, 247 (E.D.N.Y. 2010) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)).  In the context of a private citizen's action against public officials, the plaintiff must show that: "(1) [the plaintiff] has an interest protected by the First Amendment; (2) defendants' actions were motivated or

substantially caused by [a plaintiff's] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [plaintiff's] First Amendment right." *Old St. George's LLC v. Bianco*, 389 Fed. Appx. 33, 35 (2d Cir 2010).

Mpala has failed to allege that his speech was protected under the First Amendment, that Tonelli and the New Haven Police Officers were motivated by Mpala's protected speech and that the Defendant's actions effectively chilled the exercise of his First Amendment rights. *See Petrossian v. Collins*, No. 11–455, 2012 WL 1593060, at *1 (3d Cir. May 8, 2012) (holding that patron who was banned from library for passing a lewd note to a librarian failed to establish a First Amendment violation because "his note to the librarian was [not] constitutionally protected activity."); *Tronsen v. Toledo-Lucas County Public Library*, No. 3:08CV148, 2008 WL 2622939, at *1-2 (N.D. Ohio June 30, 2008) ("It is clear from the record that the plaintiff disrupted the female patron's right to quiet enjoyment of her time and activity in the library. Approaching another patron and handing her a note that she found to be offensive is not protected speech under the First Amendment.").

Moreover it is well established that "restrictions on talking and other disruptive behavior in a library are fundamentally reasonable" under the First Amendment. *Madrid v. Lopez*, No. C 96–1882 TEH, 1997 WL 102508, at *1 (N.D. Cal. 1997); *Hunt v. Wise*, No. 8:07–cv–1168–T–30TGW, 2009 WL 2163108, at *5 (M.D.Fla. July 17, 2009) ("Although that right is not without limitation, any restriction on a person's First Amendment right to access a library must be reasonable and not an effort to suppress expression merely because a public

official opposes the speaker's view."); *Neinast v. Board of Trustees of Columbus Metropolitan Library,* 346 F.3d 585, 592 (6th Cir. 2003) (holding that library rule that patrons wear shoes did not violate patron's First Amendment right because the rule was rationally related to legitimate government interests of protecting public health and safety); *Brinkmeier v. City of Freeport,* No. 93 C 20039, 1993 WL 248201, *5 (N.D.Ill. July 2, 1993) (Library code of conduct "which prohibits disruptive behavior in a public library is at least conceptually inoffensive to the First Amendment."); *Kreimer v. Bureau of Police for the Town of Morristown,* 958 F.2d 1242, 1263 (3d Cir.1992), ("[p]rohibiting disruptive behavior is perhaps the clearest and most direct way to achieve maximum Library use.").   Mpala has again tendered the naked assertion that his First Amendment rights were violated without further factual enhancement to render his claim plausible.   The Court therefore dismisses Mpala's First Amendment claim.

   iv.   **Municipal Liability**

   Plaintiffs can only sue a municipality under 42 U.S.C. § 1983 for constitutional violations of its employees occurring pursuant to an official policy or custom.   *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). "A Section 1983 suit against a municipal officer in his official capacity is considered a suit against the municipality itself, and therefore the officer may be held liable only if the municipality is liable for an unconstitutional 'policy'  or 'custom' under the principles of *Monell*."   *Oliphant v. Villano,* No.3:09cv862(JBA), 2011 WL 3902741, at *4 n.8 (D. Conn. Sept. 6, 2011) (citations omitted).  "In order to prevail on a claim against a municipality under section 1983 based on acts of a

public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 694).   A municipality may be "held liable if a plaintiff proves the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority."  *Zherka v. DiFiore*, 412 Fed.Appx. 345, 348 (2d Cir. 2011) (citing *Monell*, 436 U.S. at 695).

Mpala fails to alleges even a formulaic recitation of the elements of a *Monell* claim nonetheless the required further factual enhancement to render his claim against the City plausible.  Mpala fails to allege any facts regarding a municipal custom or practice nor has he alleged any failures to train.  Mpala fails to plead any factual content to allow the Court to draw the reasonable inference that the City is liable under *Monell*.  The Court therefore dismisses Mpala's claim against the City.

In deference to his *pro se* status, Mpala has been given and taken advantage of multiple opportunities to amend his complaint in response to multiple motions to dismiss by the Defendants. Permitting Mpala yet another opportunity to amend would therefore be futile.

**<u>Conclusion</u>**

**Based upon the above reasoning, Defendants' [Dkt. ##20 and 29] motions to dismiss are GRANTED as to all of Plaintiff's claims.  The Clerk is directed to close the case.**

**IT IS SO ORDERED.**

**_____/s/_____**
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: February 22, 2013**